UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,

                              MEMORANDUM & ORDER

      v.                                 03-CR-1382 (NGG)

ANTHONY URSO, et al.,

        Defendants.
------------------------------------------------------X

GARAUFIS, United States District Judge.

      Defendant Anthony Basile is charged with violations of 18 U.S.C. § 1962(d), the RICO conspiracy statute, alleging that he conspired to murder and murdered Robert Perrino, conspired to distribute marijuana, and engaged in loansharking in furtherance of a RICO enterprise. (Indictment (S-1) ¶¶ 13-15, 72, 108.) Basile moves (1) to preclude evidence of his prior marijuana conviction pursuant to Federal Rules of Evidence 401 and 403; (2) to dismiss Racketeering Acts 27 (Conspiracy to Distribute Marijuana) and 49 (Loansharking Conspiracy) of the RICO conspiracy; and (3) to open the grand jury minutes, or in the alternative for *in camera* review of the minutes. For the reasons set forth below, Basile's motion for *in camera* review of the grand jury minutes is GRANTED, and his motions to preclude evidence of a prior conviction, to dismiss Racketeering Acts 27 and 49 , and to open the grand jury minutes are DENIED.

**I.      Factual Background**

      Anthony Basile is a defendant in a multi-defendant prosecution in which the Government alleges that Basile was involved in a number of illegal acts, including murder, marijuana distribution, and loansharking in furtherance of the Bonanno organized crime family ("OCF"). In

1

the current indictment, he is alleged to have participated in three racketeering predicate acts in furtherance of the Bonanno OCF: Racketeering Act ("RA") 27 (conspiracy to distribute marijuana from 1990 to 1993), RA 33 (conspiracy to murder and murder of Robert Perrino in 1992), and RA 49 (extortionate extension and collection of credit ("loansharking") from 2002 to 2003). (S-1 ¶¶ 13-15, 72, 108.) The relevant facts of the marijuana distribution and loansharking predicate acts that are the basis of Basile's instant motions follow.

**A.     Marijuana Distribution**

Basile is charged in Racketeering Act 27 with the following:

> In or about and between January 1990 and May 1993, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY BASILE, together with others, knowingly and intentionally conspired to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing marijuana . . . .

(S-1 ¶ 72.) This indictment mirrors the indictment in United States v. Puglisi, No. 92-CR-1008 (E.D.N.Y. 1995) (Seybert, J.), in which Basile and two co-defendants were convicted of conspiracy to distribute marijuana. In Puglisi, the government alleged that:

> In or about and between January 1990 and October 1992, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FREDERICK PUGLISI, SILVERIO ROMANO, also known as "Sal," ANTHONY BASILE, and others, did knowingly and intentionally conspire to possess with the intent to distribute 1000 kilograms or more of a substance containing a detectable amount of marijuana . . . .

(Basile's Mot. Preclude, dated Sept. 22, 2005, at 5-6; see also App., at 3.)

On April 6, 2005, Basile moved to dismiss the marijuana distribution conspiracy predicate act (RA 27) on due process grounds, arguing that the Puglisi conviction involved a different conspiracy than the conspiracy alleged in the instant indictment, and that the

2

government's theory that the marijuana distribution scheme in Puglisi furthered the Bonanno OCF was irreconcilable with the government's theory in Puglisi. By Memorandum and Order dated May 3, 2005, I denied Basile's motion, ruling that the Puglisi and current indictments were reconcilable on the theory that the marijuana distribution advanced both the Puglisi and Bonanno enterprises. (Memorandum and Order, dated May 3, 2005 ("May 3, 2005 M&O"), at 10-11.)

**B.     Loansharking**

The Urso indictment charges Basile with loansharking as a predicate act and in two substantive counts. The racketeering act and substantive counts charge Basile with the same allegation under different criminal statutes: "In or about and between January 2002 and December 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY BASILE, together with others, knowingly and intentionally [extended and collected extortionate] extensions of credit." (S-1 ¶¶ 109-10, 126-27.)

On Basile's motion, I dismissed the substantive counts as unconstitutionally vague, because the allegation did not specify the loansharking victim(s), the location(s) in which the extortionate act(s) occurred, the dates of the alleged offenses, the amount(s) of the loan(s), or the nature of the threat(s) used to collect payment. (May 3, 2005 M&O, at 13.) However, noting the less stringent pleading requirements in conspiracy cases, I found RA 49 to have been adequately pled, because it places Basile on notice of "the crime which Basile is accused of having conspired to commit." (Id. at 17.) Basile has not been re-indicted on the substantive loansharking counts.

3

## II. DISCUSSION

### A. Motion to Preclude

Basile moves this court to preclude evidence of the Puglisi conviction as irrelevant under Federal Rule of Evidence 401 to the allegations in the Urso indictment. Federal Rule of Evidence 401 considers relevant all "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The Supreme Court explains that:

> Rules 401 and 403 establish the broad principle that relevant evidence - evidence that makes the existence of any fact at issue more or less probable - is admissible unless the Rules provide otherwise. Rule 403 allows the trial judge to exclude relevant evidence if, among other things, 'its probative value is substantially outweighed by the danger of unfair prejudice.'

Huddleston v. United States, 485 U.S. 681, 687 (1988) (quoting Fed. R. Evid. 403). "A district court has broad discretion in choosing whether to admit evidence." Bickerstaff v. Vassar College, 196 F.3d 435, 449 (2d Cir. 1999)

In his motion to preclude the Puglisi conviction, Basile acknowledges that previously prosecuted conduct may be used as a predicate act in a subsequent RICO prosecution. (Basile's Mot. Preclude, dated Sept. 22, 2005, at 3-4 (citing United States v. Scarpa, 913 F.2d 993, 1014, n.8 (2d Cir. 1990), *cert. denied*, 498 U.S. 816 (1990)).) However, Basile argues that the alleged acts in the Puglisi conviction are different from the alleged marijuana distribution acts in the Urso indictment, and that the Puglisi conviction is therefore irrelevant in the instant prosecution. (Id. at 4 (urging that "the agreement of A and B to distribute drugs does not make it any more likely that A and C agreed to distribute drugs - the former is simply not relevant to prove the

4

latter").)

This contention lacks merit, as it ignores my previous ruling that the alleged marijuana distribution could have furthered both the Puglisi and Bonanno conspiracies. (May 3, 2005 M&O, at 10-11.) As a result, the Puglisi conviction is relevant to show Basile's involvement in the Bonanno conspiracy. Indeed, the Government has stated that RA 27 is based on the same conspiracy to distribute marijuana for which he was convicted in 1995. (Gov't Mem. Opp. Mot. Preclude, at 12.) Insofar as Basile discerns differences in the Puglisi and Urso marijuana distribution indictment allegations, these differences appear to result from the fact that the Urso indictment is less specific in its allegations than the Puglisi indictment. Accordingly, there is no basis to conclude that the alleged marijuana distribution is different than the one for which Basile was convicted in 1995.

Further, Basile's attempt to characterize the 1995 conviction as irrelevant because it is merely probative as to whether Basile "*agreed with Puglisi and others* to distribute marijuana," (Basile's Reply Mem. Mot. Preclude, at 6 (emphasis in original)) is unavailing, because intent to commit the offense is an element of a conspiracy allegation. "To prove conspiracy, the government must show that the defendant agreed with another to commit the offense; that he 'knowingly' engaged in the conspiracy with the 'specific intent to commit the offenses that were the objects of the conspiracy'; and that an overt act in furtherance of the conspiracy was committed." United States v. Monaco, 194 F.3d 381, 386 (2d Cir. 1999). The Puglisi conviction is therefore highly probative of the fact that Basile had the intent to distribute marijuana during the relevant period. Accordingly, the Puglisi conviction is relevant.

To the extent that Basile submits that the probative value of the Puglisi conviction is

outweighed by the likelihood of unfair prejudice, Fed. R. Evid. 403, Basile does not claim any special prejudice, but rather rests his argument of prejudice on the conclusion that the conviction is minimally relevant. (See Transcript of Status Conference, dated Jan. 23, 2006 ("S.C. Tr."), at 55 ("a prior conviction will hurt any defendant . . . . But . . . the prejudice . . . is much worse [here], because the probative value is" *de minimus*.) However, the conviction is relevant and highly probative of an element of the racketeering charge. As a result, any prejudice Basile claims from the Prosecution's use of the Puglisi conviction is not unfair, and is outweighed by its probative value. See U.S. v. Abel, 469 U.S. 45, 48-49 (1984) ("A district court is accorded a wide discretion" in balancing the probative value of evidence against its danger of unfair prejudice under Rule 403). Therefore, Basile's argument that the Puglisi conviction should be excluded under Federal Rules of Evidence 401 and 403 is without merit.

**B.      Motion to Dismiss**

Basile moves to dismiss RA 27 (conspiracy to distribute marijuana) and RA 49 (loansharking) on the basis that the government allegedly made an improper presentation to the grand jury to establish those predicate acts. Basile alleges that in its presentation to the grand jury regarding RA 27, that the Prosecution relied solely on the Puglisi conviction. With respect to RA 49, Basile alleges that while attempting to re-indict Basile for the loansharking substantive counts, the Prosecution inadvertently presented exculpatory evidence to the second grand jury, and then discontinued the grand jury to avoid having the grand jury reconsider RA 49.

The Grand Jury Clause provides, in relevant part, that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. "Grand jury proceedings carry a 'presumption of regularity.'"

6

United States v. Torres, 901 F.2d 205, 232-33 (2d. Cir. 1990) (citing Hamling v. United States, 418 U.S. 87, 137 n.23 (1974) (internal quotation and citations omitted)). A district court cannot dismiss an indictment without a showing that the indictment was the result of prosecutorial misconduct of a type that the court has the power to regulate. United States v. Williams, 504 U.S. 36, 46-47, 54 (1992). A court reviews grand jury proceedings under a harmless error analysis. The Bank of Nova Scotia v. United States, 487 U.S. 250, 254-56 (1988). Accordingly, dismissal of an indictment is only appropriate if "it is established that the violation substantially influenced the grand jury's decision to indict, or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." Id. (quoting United States v. Mechanik, 475 U.S. 66, 78 (1986)).

1.  *Motion for In Camera Review of the Grand Jury Minutes*

As a preliminary matter, I must address Basile's motion to open the grand jury record pursuant to Fed. R. Crim. P. 6(e)(3)(E)(ii) or for *in camera* review of the minutes to determine whether the RA 27 or 49 should be dismissed. Rule 6 permits this court to direct the disclosure of grand jury minutes *sua sponte* or at the request of either party. Fed. R. Crim. P. 6(e)(3)(E). Review of grand jury minutes is "rarely permitted without specific factual allegations of government misconduct." United States v. Torres, 901 F.2d 205, 233 (2d Cir. 1990).

In support of his motion to open the grand jury minutes regarding the marijuana distribution allegation, Basile alleges that the grand jury relied solely on the Puglisi conviction to indict on RA 27. (Def's Reply Mem. Supp. Mot. Dismiss, at 2.) Basile fails to allege government misconduct in its grand jury presentation of RA 27, the marijuana distribution predicate act. The Puglisi conviction is relevant and probative evidence of RA 27. Basile does

not allege that the prosecution in its presentation of the Puglisi conviction misled or misrepresented this evidence to the grand jury. As a result, Basile has not alleged governmental misconduct that would warrant disclosure of the grand jury minutes regarding RA 27.

Regarding RA 49, loansharking, Defendant alleges that the Prosecution in the grand jury that indicted Basile on RA 49 and two substantive counts of loansharking "relied solely on the testimony of informant witnesses, who testified to out-of-court statements about an alleged loan by Basile to a third-party." (Def's Reply Mem. Supp. Mot. Dismiss, at 4.) Further, Defendant alleges that after I dismissed the substantive loansharking counts as unconstitutionally vague, the Prosecution convened a new grand jury to re-indict Basile at which the Prosecution presented "the 'victim' who denied that a crime occurred - at which point, apparently, the government scuttled the matter, thereby denying the grand jury any opportunity to consider the charge on which it had heard evidence." (Id.)

I found that Basile's allegations regarding the Prosecution's presentation of RA 49 to the second grand jury warranted an *in camera* review of the grand jury minutes. (See Order, dated Jan. 31, 2005.) I have reviewed these minutes, and, satisfied that no prosecutorial misconduct occurred for the reasons set forth infra, I decline to order the disclosure of the minutes.

   *2. Marijuana Distribution*

Basile seeks dismissal of RA 27 (marijuana distribution) on the basis that "it would have been improper, and insufficient, for the government to obtain an indictment on the charge of marijuana distribution . . . using evidence of Mr. Basile's conviction in that earlier, Puglisi, case, without also providing some proof that Basile distributed marijuana

8

back in 1990 to 1992 *on behalf of the Bonanno family enterprise* . . . ." (Basile Mem. Supp. Mot. Dismiss, at 3-4 (emphasis in original).)  The government, in opposing this motion, refers to its detention memorandum for Basile, in which it proffered that at trial it will present "the testimony of cooperating witnesses, the seizure of marijuana and drug paraphernalia from an apartment used by Basile, surveillance evidence, and a certified copy of Basile's prior marijuana conviction."  (Gov't Mem. Opp. Mot. Dismiss, at 7.)

Basile's motion fails even if it were true that the sole evidence presented to the grand jury in support of RA 27 was Basile's 1995 conviction.  Basile does not allege that the Prosecution engaged in misconduct in its presentation of evidence of RA 27 to the grand jury, and having reviewed the grand jury minutes I conclude that no misconduct occurred.  As a result, Basile cannot challenge the sufficiency of the evidence presented. Williams, 504 U.S. at 46-47.  Therefore, Basile's motion to dismiss RA 27 is denied.

### 3. *Loansharking*

Basile next argues that dismissal of RA 49 (loansharking) is necessary because after I dismissed the substantive loansharking counts, the Prosecution reconvened the grand jury to re-indict Basile on the substantive loansharking counts and presented the alleged victim of the loansharking scheme, who denied that he took a loansharking loan from Basile.  (Def's Mem. Supp. Mot. Dismiss, at 4.)  Basile moves this court to dismiss RA 49 because the prosecution misled the second grand jury by presenting exculpatory evidence and then dismissing the grand jury before it could "consider the testimony of the alleged victim that wholly exonerated defendant Basile of the loansharking crime . . . ." (Id. at 8.)

9

In the proceedings leading up to the indictment, the grand jury heard testimony from an FBI agent who presented hearsay statements of two cooperating witnesses, Joseph D'Amico and Frank Lino, who said that Basile provided a loansharking loan to John Lombardo. (Grand Jury Transcript ("G.J. Tr."), dated Dec. 13, 2003, at 72-74.) Based on this testimony, the grand jury indicted Basile for loansharking as a racketeering act and two substantive counts.

After I ruled the substantive counts unconstitutionally vague, the Government reconvened the grand jury, and presented John Lombardo. Lombardo twice denied taking a loansharking loan from Anthony Basile. (G.J. Tr., dated Sept. 15, 2005, at 12.) When asked whether he ever took a loansharking loan, Lombardo invoked his Fifth Amendment right against self-incrimination. (G.J. Tr., dated Sept. 15, 2005, at 12, 22.) Lombardo at first denied stating to FBI agents that Basile was involved in loansharking, then admitted that he told the agents that he could help them find someone who had taken a loansharking loan from Basile. (Id. at 15-16.)

Lombardo's testimony is substantial exculpatory evidence, as Lombardo, the purported victim of Basile's loansharking, unequivocally stated that he did not take a loansharking loan from Basile. Notwithstanding that Lombardo's testimony is vague, evasive, and contradictory at points, it is very clear on this point. Moreover, while the first indictment in which an FBI agent relayed hearsay statements by two cooperating witnesses was supported by probable cause, Lombardo's statement, offered to *the same grand jury* that indicted Basile in the first instance, effectively negated the probable cause supporting RA 49. As a result, I find that the prosecution's act of dismissing the grand

10

jury after it heard testimony that negated probable cause before it could reconsider RA 49 "substantially influenced the grand jury's decision to indict," insofar as the grand jury would not have indicted had it heard Lombardo's testimony in the first instance. Bank of Nova Scotia, 487 U.S. at 254-56.

Of course, an attack on the sufficiency of the evidence presented to the grand jury "is not appropriately addressed on a pretrial motion to dismiss the indictment." United States v. Alfonso, 143 F.3d 772, 776-77 (2d Cir. 1998); see also Bank of Nova Scotia, 487 U.S. at 261. Basile must show that the prosecutor in indefinitely adjourning the grand jury engaged in the type of prosecutorial misconduct proscribed by the Supreme Court in Williams.

In Williams, the Court addressed the question of whether it was prosecutorial misconduct for the government to fail to put before the grand jury "substantial exculpatory evidence" in its possession. The court held that a federal court lacks the power to dismiss an indictment on the ground that the prosecutor failed to present substantially exculpatory evidence to the grand jury. Williams, 504 U.S. at 55. The Williams Court reasoned that because the grand jury is an accusatory rather than an adjudicative body, that the court cannot interfere with the grand jury's historic role of "hear[ing] only the prosecutor's side." Id. at 51. The question facing this court is fairly distinct from the one addressed in Williams, as Basile does not seek to have this court decide what is and what is not appropriate evidence for the prosecution to present to the grand jury. The question is whether this court has the power to determine whether a grand jury must reconsider a previous probable cause finding in light of all the evidence

11

that the prosecution presents to it.

Allowing the prosecution to indefinitely adjourn a grand jury after introducing exculpatory evidence that negates its previous finding of probable cause raises serious concerns about the court's role in preventing the prosecution's abuse of power in grand juries. Courts in this circuit have noted that the historic role of the grand jury as a bulwark against arbitrary prosecutions has substantially eroded over time. See, e.g., United States v. Mendez-Hernandez, No. 89 Crim. 323, 1990 U.S. Dist. LEXIS 5327, *2-*4 (S.D.N.Y. 1990). To prevent undue prosecutorial influence over grand juries, especially in the Second Circuit where an indictment is a finding of probable cause, United States v. Estepa, 471 F.2d 1132, 1136 (2d Cir. 1972), the district court must provide some meaningful regulatory role to ensure the independence of grand juries. See United States v. Mechanik, 475 U.S. 66, 74 (1985) (O'Connor, J., concurring) (finding that judicial supervision of grand juries prevents the "undermining [of] the grand jury's function of protecting the innocent from unwarranted public accusation").

This supervisory power can be used to dismiss an indictment where misconduct before a grand jury "amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions.'" Williams at 46 (quoting Mechanik, 475 U.S. at 74 (O'Connor, J., concurring)). However, the Supreme Court in Williams made clear that courts may not use that supervisory power "as a means of *prescribing* . . . standards of prosecutorial conduct in the first instance . . . ." Id. at 46-47 (emphasis in original).

Courts that have had occasion after Williams to consider its reach have held that

12

the power of the courts to supervise the conduct of prosecutors in grand jury proceedings turns on whether the power is conferred by congressional act or the court's rule-making power, or touches on areas within the traditional regulatory ambit of the judiciary. Hence, a court may rule on the applicability and reach of court duties created by Federal Rule of Criminal Procedure 6 ("Rule 6"), the rule that governs grand jury proceedings. Lombardo v. Commissioner, 99 T.C. 342, 361–69 (T.C. 1992). The First Circuit held that Williams does not prevent a district court from adopting a rule regulating the process by which prosecutors subpoena attorneys to testify about attorney-client communications in front of a grand jury. Whitehouse v. United States Dist. Court, 53 F.2d 1349, 1360 (1st Cir. 1995). The independent nature of the grand jury is not impermissibly compromised by a district court considering conflicts of interest of the prosecutor in grand jury proceedings. In re Starr, 986 F. Supp. 1144, 1152 (E.D. Ak. 1997). A court may hear claims against prosecutors for knowingly presenting false evidence to a grand jury that assert a "constitutional right not to be knowingly arrested and subjected to prosecution without probable cause," which satisfy § 1983 pleading requirements. Lewis v. McDorman, 820 F. Supp. 1001, 1007 (W.D. Va. 1992).

On the other hand, Williams forbids courts from considering the sufficiency or reliability of evidence presented before the grand jury absent a finding that the prosecution actively misrepresented the evidence or made prejudicial and unsupported remarks to the grand jury about the defendant. Thus, the Second Circuit has upheld the power of courts (and has not limited this power after Williams) to dismiss an indictment only in the case of extreme prosecutorial misconduct. See, e.g., United States v. Hogan,

13

712 F.2d 757, 761-62 (2d Cir. 1983) (indictment dismissed where the prosecutor's "flagrant and unconscionable" acts included the extensive presentation to the grand jury of false and misleading testimony, and speculative and unsupported allegations of other criminal conduct and statements by the prosecutor that the defendant was a "real hoodlum" who should be indicted); United States v. Vetere, 663 F. Supp. 381, 386-87 (S.D.N.Y. 1987) (indictment dismissed where prosecutor made extensive use of false and misleading evidence before the grand jury regarding defendant's alleged criminal background).

From this inquiry, I conclude that a district court has the power to dismiss an indictment if this power resides in Rule 6 or in some traditional function of the judiciary, or in the case of extreme prosecutorial misconduct, evidenced by the prosecutor's mischaracterization of the evidence or prejudicial statements that substantially influence the grand jury's decision to indict.

First, I find that requiring the grand jury to reconsider RA 49 in light of newly presented post-indictment exculpatory evidence lies outside of the regulatory function of the courts in supervising grand juries. The court has the power under Rule 6 to summon and dismiss a grand jury. Fed. R. Crim. P. 6(a)(1), (g). However, after the court summons a grand jury, it is convened and adjourned at the prosecution's behest, and the court has no power under Rule 6 to compel a grand jury decision. Rule 6 thereby reserves this power for the prosecution. Nor does the regulation of how and when the prosecution presents evidence to the grand jury implicate any other sphere of the judiciary's traditional regulatory power.

Thus, conferring the power to compel the grand jury to reconsider indictment allegations to the court comes at the expense of the prosecution, which would no longer have the sole power to decide when to end an investigation. For the court to assume a regulatory role in this instance is inconsistent with the wide latitude traditionally given to the prosecution in how it conducts grand jury proceedings. "The Double Jeopardy Clause of the Fifth Amendment does not bar a grand jury from returning an indictment when a prior grand jury has refused to do so." Williams, 504 U.S. at 49. At the newly impaneled grand jury, the prosecution "need not even recall witnesses; but can simply present selected transcripts to the second grand jury." United States v. Doe (In re Grand Jury Proceedings), 219 F.3d 175, 189 (2d Cir. 2000). It would be a contradictory application of the court's supervisory power for this court to compel the prosecution to instruct the grand jury to reconsider an indictment based on presented post-indictment evidence while at the same time permitting the prosecution to conceal or selectively present that evidence to a newly impaneled grand jury. Williams, 504 U.S. at 54. Whether or not such power would enhance the integrity of the grand jury as an independent truth-seeking body, compelling the grand jury to reconsider indictment allegations would alter the traditional relationship between the courts, the prosecution, and the grand jury, and is precisely the type of rule-prescription power that the Williams Court ruled that district courts do not have. Accordingly, I find that this court lacks the power to regulate when the grand jury must consider an indictment allegation.

Furthermore, an *in camera* review of the grand jury minutes confirms that before the indictment, the prosecution did not actively misrepresent the evidence or make

15

misleading statements about the Defendant to the grand jury. In this regard, Basile's contention that the prosecution "misled" the grand jury in presenting post-indictment exculpatory evidence without requiring it to reconsider the indictment lacks merit. (Def. Reply, at 4.) Basile, in this motion, cites to Second Circuit precedent permitting district courts to dismiss indictments in which the prosecution "misled" the jury by presenting weak hearsay evidence where direct testimony was available and would have resulted in a finding of no probable cause. See United States v. Ruggiero, 934 F.2d 440, 447 (2d Cir. 1991); United States v. Torres, 901 F.2d 205, 233 (2d Cir. 1990); United States v. Estepa, 471 F.2d 1132, 1137 (2d Cir. 1972). The Second Circuit has not ruled on whether Williams has overruled Estepa and its progeny. However, the Williams Court expressly disapproved of Estepa on the grounds that the charge that the prosecutor "misleads" a grand jury by presenting incomplete evidence is a thinly veiled, impermissible attempt to attack the sufficiency of the evidence supporting the indictment. Williams, 504 U.S. at n.8. I join the other district courts in this circuit that have concluded that Williams supersedes this line of cases. See, e.g., United States v. Carter, No. 04 Cr 594, 2005 U.S. Dist. LEXIS 1127, at *7-*9 (S.D.N.Y. Jan. 25, 2005); United States v. Rodriguez, No. 95 CR. 0754, 1996 U.S. Dist. LEXIS 12222, at *2-*4 (S.D.N.Y. Aug. 20, 1996); United States v. Gibbons, 92 Cr. 1146, 1995 U.S. Dist. LEXIS 3460, at *11 (S.D.N.Y. March 21, 1995); Wright, Federal Practice and Procedure, § 111, at 488 (1999); see also United States v. Orjuela, 809 F. Supp. 193, 197 (E.D.N.Y. 1992) (Glasser, J.) (finding that the Court's holdings in Mechanik and Williams "compels the conclusion that this court lacks power to remedy the government's apparent abuse of power" in its failure to present

exculpatory evidence discovered after the indictment to the grand jury). Accordingly, I find that this court lacks the power to dismiss an indictment in which a grand jury was presented with post-indictment exculpatory evidence that negates its earlier probable cause finding. Williams, 504 U.S. at 46-47. As Basile's argument is foreclosed by the Supreme Court's decision in Williams, Basile's motion to dismiss RA 49 is denied.

## III. CONCLUSION

For the reasons stated herein, Basile's motion for *in camera* review of the grand jury minutes is GRANTED, and his motions to preclude the Puglisi conviction, to open the grand jury minutes, and to dismiss RA 27 and 49 are DENIED.

SO ORDERED.

Dated: March 16, 2006
      Brooklyn, N.Y.

_____/s/_____
Nicholas G. Garaufis
United States District Judge